## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 16 CR 00463-19 |
| | ) | |
| ELOY FUENTES, | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Eloy Fuentes's Motion for a Reduction of Sentence, (Dkt. 2979). For the reasons below, the Court denies Fuentes's Motion [2979].

## I.    BACKGROUND

In November 2018, Fuentes pled guilty to Count One of the Superseding Indictment and admitted that he "knowingly conspired to conduct and participate in the conduct of the affairs of the Latin Kings through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d)." (Dkt. 1327 at 1–2; Dkt. 1326). In his Plea Declaration, Fuentes admitted that he "agreed and knew that a co-conspirator, another member of the Latin Kings, would commit at least two acts of racketeering activity, including murders, arson, and robberies, in the conduct of the affairs of the Latin Kings street gang." (Dkt. 1327 at 3). Prior to the offense, Fuentes began associating with members of the Latin Kings in Cicero, Illinois at the age of thirteen in 1998. (Dkt. 1999 at 9). In 2002, Fuentes joined the Latin Kings at the age of seventeen. (*Id.*) From 2012 to 2016, Fuentes acted as the Inca of the 104th Street chapter of the Latin Kings, a role in which he was "responsible for overseeing the operations of the chapter[.]" (Dkt. 1327 at 2).

At the time of sentencing in 2020, the applicable guideline range was 168–210 months' imprisonment, based on a criminal history category of III and a total offense level of 33. (Dkt.

2356 at 1). Fuentes's placement in criminal history category III reflected four criminal history points. (Dkt. 2402 at 6:19–7:04; Dkt. 1999 at 18). The total offense level of 33 reflected the base offense level of 33 applicable to the underlying racketeering activity (conspiracy to commit murder), a three-level enhancement for Fuentes's aggravating role as a manager in criminal activity involving five or more participants, and a three-level downward adjustment for Fuentes's acceptance of responsibility. U.S.S.G. §§ 2X1.1(a), 2E1.1(a)(2), 2A1.5(a), 3B1.1(b); (Dkt. 2402 at 6:19–7:04; Dkt. 1999 at 11–13).

The Court imposed a term of 140-months' imprisonment, which is 28 months below the minimum of the guideline range applicable at the time of the sentencing. (Dkt. 2356 at 5). The Court further imposed three years of supervised release and a $100 special assessment. (*Id.*) In imposing the below-guideline sentence, the Court considered Fuentes's history, characteristics, and post-offense conduct, including his age, sincere showing of remorse, low risk of recidivism, and strong family network. (*Id.*) The Court, however, explained that the "[t]he seriousness of the offense cannot be overstated" and noted the strong need to deter others from committing similar offenses. (*Id.*)

## II.    DISCUSSION

### A.  Sentence Reduction Based on Guidelines Amendment Under Section 3582(c)(2)

First, Fuentes moves for a reduction of sentence based on Amendment 821's changes to U.S.S.G. § 4A1.1, pursuant to 18 U.S.C. § 3582(c)(2). (Dkt. 2979 at 1–5). Section 3582(c)(2) permits the district court to reduce the sentence of "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission[,]" after considering the applicable § 3553(a) factors and determining that

a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *Dillon v. United States*, 560 U.S. 817, 825–27 (2010).

When considering a proposed sentence reduction based on a guideline amendment, the Court conducts a two-step analysis. *Dillon*, 560 U.S. at 826–27. First, the Court determines whether a prisoner is eligible for a sentence reduction by considering whether the proposed reduction is consistent with U.S.S.G. § 1B1.10, the policy statement governing sentencing reductions based on guideline amendments. *Id*. This analysis includes determination of the threshold matter of whether the relevant amendment is retroactive. *See* U.S.S.G. § 1B1.10(a)(1) (limiting § 3582(c)(2) to cases in which "the guideline range applicable to [the] defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in sub-section (d)"); *see* U.S.S.G. § 1B1.10(d) (identifying which amendments are retroactive). The Court's "power under § 3582(c)(2) thus depends in the first instance on the Commission's decision not just to amend the Guidelines but to make the amendment retroactive." *Dillon*, 560 U.S. at 826. In addition to the threshold issue of whether a particular amendment is retroactive, step one requires the Court to "determine the amended guideline range that would have been applicable to the defendant if the [retroactive amendment] . . . had been in effect at the time the defendant was sentenced[,]" by "substitut[ing] only the [amended guideline] . . . for the corresponding guideline provision[] that [was] applied when the defendant was sentenced . . . ." U.S.S.G. § 1B1.10(b)(1). Then, if the prisoner is eligible for a sentence reduction, the Court proceeds to step two and considers whether § 3553(a) sentencing factors warrant the authorized reduction, "either in whole or in part[.]" *Dillon*, 560 U.S. at 826.

Beginning with step one, the Court considers whether Fuentes is eligible for a sentence reduction based on Part A of Amendment 821's changes to U.S.S.G. § 4A1.1. In 2023, Part A of

Amendment 821 retroactively changed § 4A1.1's calculation of "status points"—a form of criminal history points that relates to a defendant's "status" with respect to whether they were under a criminal justice sentence at the time of the offense. U.S.S.G. § 4A1.1(e); U.S.S.G Amendment 821, Pt. A; U.S.S.G. § 1B1.10(d) (noting that Part A of Amendment 821 applies retroactively). Under the amended version of § 4A1.1, a defendant receives one status point "if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence[.]" U.S.S.G. § 4A1.1(e); U.S.S.G Amendment 821, Pt. A. Prior to Amendment 821, § 4A1.1 provided that a defendant received "2 points if the defendant committed the instant offense while under any criminal justice sentence . . . ." U.S.S.G. § 4A1.1(d) (2018) (amended 2023) (current version at U.S.S.G. § 4A1.1(e)).

At the sentencing hearing in 2018, the Court determined that Fuentes had four criminal history points: one point for a prior offense of retail theft, one point for a prior offense of driving while intoxicated, and, pursuant to the pre-amendment version of § 4A1.1, two status points for committing the instant offense of conviction while under court supervision. (Dkt. 2356 at 1 (adopting the PSR without change); Dkt. 1999 at 15–16, 18; Dkt. 2402 at 6:19–7:04). Today, although Fuentes committed the instant offense while under another sentence, he would not receive a status point under the amended version of § 4A1.1, because he did not receive seven or more criminal history points based on his prior offenses under subsections (a) through (d). U.S.S.G. § 4A1.1(e). Fuentes would therefore receive a total of two, rather than four, criminal history points under the amended version of § 4A1.1, lowering his criminal history category from III to II and lowering the applicable guideline range from 168–210 months' imprisonment to 151–188 months' imprisonment. U.S.S.G. § 4A1.1(e); U.S.S.G. Ch. 5 Pt. A.

Considering Amendment 821's changes to the applicable guideline range, Fuentes asks the Court to reduce his term of incarceration from 140 months to 123 months. (Dkt. 2979 at 4). Fuentes argues that a reduction of his term of incarceration to 123 months—a 28-month departure from the minimum of the amended guideline range (151 months)—is appropriate because his term of incarceration (140 months) was a 28-month departure from the minimum of the original guideline range (168 months). (*Id.*) But, as the Government points out, § 1B1.10(b)(2)(A) precludes the requested reduction: "the court shall not reduce the defendant's term of imprisonment under . . . § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range[.]" U.S.S.G. § 1B1.10(b)(2)(A); (Dkt. 3056 at 3–7). Because Fuentes's term of 140 months' imprisonment is already below the minimum of the amended guideline range (151 months), § 1B1.10(b)(2)(A) does not authorize a reduction of his sentence. (Dkt. 3056 at 3–7).

In response, Fuentes asserts that, although § 1B1.10(b)(2)(A) precludes a reduction of his sentence, the Sentencing Guidelines are not mandatory and the "Court is not bound by the policy statement." (Dkt. 2979 at 3). While, as a general matter, the Sentencing Guidelines are not mandatory, § 3582(c)(2) concerns sentence reductions based on guideline amendments and permits such reductions only when they are consistent with the Sentencing Commission's policy statements. *Dillon*, 560 U.S. at 825–27. Section 3582(c)(2) thus expressly incorporates § 1B1.10(b)(2)(A), and the Court must apply § 1B1.10(b)(2)(A) when deciding a motion seeking a sentence reduction under § 3582(c)(2). *United States v. Kelly*, 313 F. App'x 899, 902–03 (7th Cir. 2009) ("To treat the provisions of section 1B1.10 as merely advisory would thus be to ignore the express proscription of Congress set forth in section 3582(c)(2)."); *United States v. Cunningham*, 554 F.3d 703, 707 (7th Cir. 2009). Fuentes further concedes that the narrow exception outlined in § 1B1.10(b)(2)(B)—which applies where the original term of imprisonment

5

was less than the guideline range pursuant to a government motion to reflect the defendant's substantial assistance to authorities—is inapplicable here, because he did not provide substantial assistance to the government. U.S.S.G. § 1B1.10(b)(2)(B); (Dkt. 2979 at 1–3; Dkt. 3095 at 4). Accordingly, Fuentes's request for a sentence reduction under § 3582(c)(2) is denied.

### B. Sentence Reduction Based on Extraordinary and Compelling Reasons Under Section 3582(c)(1)

Second, Fuentes moves for a sentence reduction pursuant to § 3582(c)(1)(A), the compassionate release provision. 18 U.S.C. § 3582(c)(1)(A); (Dkt. 2979 at 1, 5–10; Dkt. 3184 at 1–3). Under § 3582(c)(1)(A), a district court has discretion to modify an imposed term of imprisonment when four requirements are met: "(1) the defendant satisfies the exhaustion requirement prior to filing the motion in the district court; (2) the court finds that extraordinary and compelling reasons warrant a modification of the imposed term of imprisonment; (3) the Court finds that the applicable § 3553(a) factors favor a modification of the imposed term of imprisonment; and (4) the Court finds that a modification of the imposed term of imprisonment is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Reedy*, 2024 WL 5247954, at *4 (N.D. Ill. Dec. 30, 2024) (Kendall, C.J.). Here, the Government concedes that Fuentes satisfied the exhaustion requirement. (Dkt. 3056 at 11).

### 1. Extraordinary and Compelling Reasons

At step one of the merits analysis, the Court asks whether "extraordinary and compelling reasons warrant" a modification of the imposed term of imprisonment. 18 U.S.C. § 3852(c)(1)(A)(i). Because the compassionate release provision requires the Court to find that any potential modification is consistent with applicable policy statements issued by the Sentencing Commission, , the Court must follow the Sentencing Commission's guidance on which factors and circumstances qualify as "extraordinary and compelling reasons," 18 U.S.C. §

6

3582(c)(1)(A), as outlined in the corresponding policy statement, U.S.S.G. § 1B1.13. Additionally, the Court must consider the circumstances holistically, even where no one circumstance alone qualifies as an extraordinary and compelling reason for a sentence reduction. *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023) ("Our point, rather, is that no matter how the threshold is defined, a combination of factors may move any given prisoner past it, even if one factor alone does not."). Fuentes bears the burden of establishing an extraordinary and compelling reason for the requested sentence reduction. *United States v. Barbee*, 25 F.4th 531, 532 (7th Cir. 2022).

Fuentes argues that his rehabilitation activities, together with the amended guideline range, the harsh conditions of confinement he experienced during the COVID-19 pandemic, the purported disparity in sentencing between himself and similarly situated prisoners, and the overcrowding and mistreatment of prisoners at FCI-Thompson, constitute extraordinary and compelling reasons for a sentence reduction. (Dkt. 2979 at 4–10; Dkt. 3095 at 6–9; Dkt. 3184 at 1–3).

At the outset, the Court declines Fuentes's invitation to consider the amended guideline range among the circumstances that constitute an extraordinary and compelling reason for a sentence modification, because amendments to the guideline ranges are in no way extraordinary. (Dkt. 2979 at 4); *see United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) ("There's nothing 'extraordinary' about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255."). This conclusion also follows from the fact that Congress created a separate provision, § 3582(c)(2), in the same statutory section that houses the compassionate release provision to govern sentence reductions based on retroactive guideline ranges. 18 U.S.C. § 3582(c)(2). And, as explained above, the policy statement incorporated by § 3582(c)(2) expressly prohibits a modification of Fuentes's

sentence based on the amended guideline range. Fuentes cannot use the compassionate release provision to obtain relief based on a guideline amendment for which relief is foreclosed under § 3582(c)(2). *See United States v. Brock*, 39 F.4th 462, 465 (7th Cir. 2022) ("[T]he authority in the compassionate release statute 'only goes so far' and 'cannot be used to effect a sentencing reduction at odds with Congress's express determination embodied in" other statutes.' ").

### i. Conditions of Confinement During COVID-19 Pandemic

The Sentencing Commission's policy statement governing compassionate release, § 1B1.13, instructs that a "serious physical or medical condition" or "serious functional or cognitive impairment"—which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"—independently qualify as extraordinary and compelling reasons for a sentence reduction. U.S.S.G. §§ 1B1.13(b)(1)(B)(i)–(ii).

Fuentes argues that while he "does not appear to suffer any permanent medical problems from contracting the coronavirus on multiple occasions," he "did suffer great mental torment for . . . two years" because "[h]e was forced to live under extremely restrictive conditions with very limited ability to communicate with his family[.]" (Dkt. 2979 at 5–6). Fuentes contends that "go[ing] two years without visits from his family was a traumatic experience," (*Id*. at 6), which made his sentence harsher and more punitive than the Court had anticipated at sentencing. (*Id*. at 6–7) (citing *United States v. Rodriguez*, 492 F.Supp.3d 306, 316 (S.D.N.Y. 2020)). Fuentes, however, does not allege that this traumatic experience resulted in a serious medical condition.

While the Court is sympathetic to the burdens that the COVID-19 pandemic imposed on prisoners, such as lockdowns and restrictions on family visitation, Fuentes's experience of enduring such general burdens, in the absence of any resulting serious physical or medical condition or other individualized evidence of grave hardship, does not constitute an extraordinary

8

and compelling reason for a sentence modification. *United States v. Hanson*, 2024 WL 5134348, at *1 (7th Cir. Dec. 17, 2024) ("[M]itigation measures that the prison used to respond to COVID-19, which Hanson contends created harsh conditions of confinement, are not a basis here for early release under § 3582(c)(1)(A)."); *United States v. Khelifi*, 2022 WL 3925623, at *1 (7th Cir. Aug. 31, 2022) ("On appeal Khelifi challenges the judge's ruling, insisting that the pandemic-related restrictions in prison are an extraordinary and compelling reason for release because they 'enhanced [the] punitive nature of his sentence.' But Khelifi gave the judge no reason to conclude as much. In the district court, he did not support his assumption with individualized evidence, as we have required."); *United States v. Miller*, 2022 WL 2187555, at *1 (7th Cir. June 16, 2022) ("And to the extent that Miller challenges the conditions and medical care at Greenfield more generally, a compassionate-release motion is not the right vehicle."); *see United States v. Grisanti*, 2022 WL 2713512, at *2 (S.D. Ind. July 13, 2022) ("All inmates throughout the country were subjected to COVID-19 lockdowns and limitations."). And, as the Government points, the Court sentenced Fuentes during the COVID-19 pandemic and was aware of the burdens that the COVID-19 mitigation measures imposed on prisoners at the time of sentencing.

Fuentes's reliance on *United States v. Brown*, 78 F.4th 122, 132 (4th Cir. 2023), and similar cases is misplaced. (Dkt. 2979 at 6–7; Dkt. 3095 at 7–8). The Fourth Circuit's decision in *Brown* supports the proposition that courts may consider harsh conditions of confinement when considering whether the § 3553(a) sentencing factors favor a sentence modification but does not support, or even speak to, the proposition that generally harsh conditions of confinement, such as those resulting from COVID-19 mitigation protocols, can constitute, independently or cumulatively with other circumstances, an extraordinary and compelling reason for a sentence modification under the compassionate release provision. *Id.* The Court thus concludes that the

general burdens associated with COVID-19 mitigation measures do not rise to the level of an extraordinary and compelling reason to modify Fuentes's sentence.

<i>ii.</i>   <u><i>Present Conditions of Confinement: Mistreatment & Overcrowding</i></u>

With respect to mistreatment of prisoners by prison staff, § 1B1.13(b)(4) provides that "physical abuse" of the defendant, "while in custody serving the term of imprisonment sought to be reduced[,]" constitutes an extraordinary and compelling reason for a sentence modification, where the physical abuse "result[ed] in 'serious bodily injury,' as defined in the Commentary to § 1B1.1[,]" and "was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant." U.S.S.G. § 1B1.13(b)(4)(B). Additionally, while § 1B1.13 does not specifically address the issue of overcrowding, § 1B1.13(b)(5), a catch-all provision, instructs that "any other circumstance or combination of circumstances" may constitute extraordinary and compelling reasons for release, if, "when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), [they] are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5).

Here, Fuentes argues that harsh conditions at FCI-Thomson—specifically overcrowding and mistreatment by prison staff—make it "a horrible place to do time." (Dkt. 3184 at 1–2). Fuentes specifically alleges that FCI-Thomson employs staff members who mistreat inmates by employing excessively tight restraints and imposing unnecessary lockdowns to get higher pay. (*Id.*) Fuentes further asserts FCI-Thomson houses inmates far in excess of the maximum occupancy, leading to severe living conditions such as double-celling. (*Id.* at 2–3).

But, as the Court explained above, Fuentes does not meet his burden where he only offers general complaints about prison-wide overcrowding or non-specific misconduct by prison staff and fails to offer individualized evidence of serious hardship, such as a serious physical injury

10

resulting physical abuse by prison staff. *See* U.S.S.G. § 1B1.13(b)(4)(B); *Khelifi*, 2022 WL 3925623, at *1; *Miller*, 2022 WL 2187555, at *1; *see Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) ("The double celling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care, or sanitation. Nor did it increase violence among inmates or create other conditions intolerable for prison confinement. . . . Although job and educational opportunities diminished marginally as a result of double celling, limited work hours and delay before receiving education do not inflict pain . . . ."). Fuentes's allegations of overcrowding and mistreatment therefore do not rise to the level of an extraordinary and compelling reason to modify Fuentes's sentence.

### iii. *Rehabilitation*

Section 1B1.13 further instructs that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement[,]" but provides that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d); *United States v. Hanson,* 2024 WL 5134348, at *5–6 (7th Cir. Dec. 17, 2024) (citing *United States v. Peoples*, 41 F.4th 837, 841 (7th Cir. 2022)). Fuentes describes his participation in several rehabilitation programs. (Dkt. 2979 at 5). Specifically, Fuentes has completed 800 hours of teaching apprenticeship, received his GED, and served as an ESL tutor. (Dkt. 2979 at 5). Though Fuentes acknowledges he received one minor disciplinary infraction, he has had no other issues. (Dkt. 3095 at 6; Dkt. 3056 at 12).

While Fuentes's rehabilitation efforts are laudable, the Court does not find Fuentes's such efforts, viewed in combination with the other circumstances analyzed above, to be an extraordinary and compelling reason for his release. U.S.S.G. § 1B1.13(d). After all, "[t]aking classes while incarcerated is common rather than extraordinary." *United States v. Vaughn*, 62 F.4th 1071, 1072

(7th Cir. 2023). Furthermore, because of the significant shortcomings of Fuentes's submissions regarding each of the individual circumstances he offers as extraordinary and compelling reasons for a sentence reduction, the Court thus also concludes that these circumstances, even when considered collectively, do not present an extraordinary and compelling reason for his release.

### iv. *Sentencing Disparity*

Fuentes further argues that the purported sentencing disparity—between his own sentence and those of two defendants convicted in the Northern District of Indiana—is an extraordinary and compelling reason for a sentence reduction. (Dkt. 2979 at 8) (first citing *United States v. Pena*, 2020 WL 3264113 (N.D. Ind. June 17, 2020); then citing *United States v. Salinas*, 2020 WL 5201397 (N.D. Ind. Sept. 1, 2020)).[1] But a sentencing disparity claim is an attack on the length of his sentence that cannot be raised as an extraordinary and compelling reason in support of a compassionate release motion. *United States v. Arojojoye*, 806 F. App'x 475, 477 (7th Cir. 2020); *United States v. Martin*, 21 F.4th 944, 946 (7th Cir. 2021). Sentencing disparity claims, like other claims of sentencing errors, must be raised on direct appeal or in a § 2255 motion. *Martin*, 21 F.4th at 946; *see United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021).

The Court thus construes Fuentes's Motion, as it relates to the sentencing disparity claim, as a successive § 2255 motion. *Arojojoye*, 806 F. App'x at 477; *United States v. Fuentes*, 2022 WL 2305326, at *7 (N.D. Ill. June 27, 2022) (denying Fuentes's § 2255 motion). But because Fuentes did not obtain the requisite prior authorization for a successive § 2255 motion from this

---

[1] Even if Fuentes could properly raise the purported sentencing disparity as an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3852(c)(1)(A), Fuentes's claim of a sentencing disparity is unavailing, because, in both *Pena* and *Salinas*, the facts of the offenses in those cases, such as the underlying racketeering activity with respect to the the RICO conspiracy offenses, were materially different. *Pena*, 2020 WL 3264113, at *1; *Salinas*, 2020 WL 5201397, at *1.

Court, 28 U.S.C. §§ 2244(a), 2255(h), the Court lacks jurisdiction to review this claim and therefore dismisses the Motion with respect to Fuentes's sentencing disparity claim. *Arojojoye*, 806 F. App'x at 477.[2]

### 2. Section 3553(a) Factors

Even if the Court were to find extraordinary and compelling reasons for a sentence reduction, the § 3553(a) factors do not favor a modification of the imposed term of imprisonment. 18 U.S.C. § 3553(a); *Reedy*, 2024 WL 5247954, at *12. Specifically, the requested sentence modification would not serve the need for the sentence imposed to reflect the seriousness of the offense and deter others from committing similar serious offenses. 18 U.S.C. § 3553(a). Currently, Fuentes has served just over 80 months of his 140-month term of incarceration, assuming that Fuentes gets credit for time served prior to the sentence.[3] (Dkt. 100; Dkt. 1326); 18 U.S.C. § 3585.

Fuentes's term of incarceration (140 months) was already a significant departure from the minimum of the pre-amendment guideline range (168 months) and would also be a significant departure from the minimum of the amended guidelines range (151 months), such that the Court finds, in its discretion, that a sentence reduction would be inappropriate in light of the severity of Fuentes's offense and the need to deter others from committing similar serious offenses. *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021); *see United States v. Gardner*, 2022 WL 1165472, at *1–2 (7th Cir. Apr. 20, 2022). Accordingly, even if the Court were to find extraordinary and

---

[2] For the same reasons, the Court declines to consider Fuentes's frivolous argument that the Court erred in the calculating criminal history points assigned to Fuentes's prior offenses. (Dkt. 2979 at 4). The Court does note, however, that, contrary to Fuentes's assertion, the Court did not assign a criminal history point to Fuentes's prior reckless conduct offense, pursuant to U.S.S.G. § 4A1.2(c)(2). (Dkt. 2356 at 1 (adopting the PSR without change); Dkt. 1999 at 17; Dkt. 2402 at 6:19–7:04).

[3] At this time, the Court does not conclusively decide whether Fuentes is entitled to credit for all the time he was in custody prior to sentencing under 18 U.S.C. § 3585.

compelling reasons for a sentence reduction, Fuentes is not entitled to a sentence reduction under § 3582(c)(1)(A), because the § 3553(a) factors do not favor a sentence reduction.

### III.    CONCLUSION

For the reasons above, the Court denies Fuentes's Motion for a Reduction of Sentence [2979].

_____
Virginia M.  Kendall
United States District Judge

Date: August 5, 2025